STOKER, Judge.
The plaintiff, Emelda Abraham, filed suit against the Lafayette Parish School Board, its superintendent of education, Dr. Wayne Vassar, and Ms. Jane Chaisson for damages which allegedly resulted from a paddling which Emmanuel Abraham received from Ms. Chaisson. Emmanuel is the minor son of the plaintiff and was a kindergarten student at J.W. Faulk Elementary School at the time of the incident. After the presentation of the plaintiff’s evidence at the trial on the merits, each of the defendants moved for a directed verdict in its favor. The trial court granted the motions and rendered judgment in favor of the defendants. The plaintiff subsequently filed a motion for a new trial which was denied. This appeal was thereafter perfected. The plaintiff asserts on appeal that the trial court erred in granting the defendants’ motion for directed verdict and erred in refusing or failing to consider evidence presented in support of a new theory of recovery based upon the defendants’ alleged failure to follow certain guidelines and policies concerning evaluation of students with special needs. We affirm the judgment of the trial court.
FACTS
In August of 1984 Emmanuel Abraham was enrolled as a kindergarten student at J.W. Faulk Elementary School in Lafayette Parish. Emmanuel transferred out of J.W. Faulk on or about October 11, 1984. He was re-enrolled at J.W. Faulk on March 15, 1985. While he attended J.W. Faulk, Emmanuel was a student of Ms. Peggy Bur-leigh. Ms. Burleigh had great difficulty managing Emmanuel’s classroom behavior and repeatedly sent notes home to Mrs. Abraham by way of Emmanuel. Most of these notes were found discarded on the school bus or in ditches. Ms. Burleigh attempted to contact Mrs. Abraham by phone to discuss Emmanuel’s problems, but was generally unsuccessful.
On March 19, 1985, after four days of frustration trying to control Emmanuel’s disruptive behavior, Ms. Burleigh summoned Jane Chaisson, the vice-principal of *51 J.W. Faulk, to administer a paddling. Ms. Burleigh had received written permission, at the beginning of the school year, from Mrs. Abraham to spank Emmanuel if necessary. (Corporal punishment is allowed by the State Department of Education and its legality is not at issue here.) Ms. Chais-son went to Ms. Burleigh’s classroom with the regulation wooden paddle and administered a paddling to Emmanuel in the hallway outside of the classroom.
When Emmanuel returned home from school that afternoon his mother noticed a large bruise on his back and immediately took Emmanuel to see Dr. Vasanth Nalam. Emmanuel returned to school two days later. This suit was subsequently filed alleging that the defendants were negligent in that the paddling was brutal and excessive and caused physical and psychological damage to Emmanuel.
DIRECTED VERDICT
The plaintiff argues that based upon the evidence presented it was error for the trial court to grant a directed verdict in defendants’ favor. Plaintiff alleged that Ms. Chaisson paddled Emmanuel so severely it caused a bruise on his back and injured his elbow. In addition to these physical injuries, it was alleged that Emmanuel became ill, had nightmares, developed a fear of women teachers and no longer wanted to go to school.
LSA-C.C.P. art. 1810 provides the procedural vehicle for a directed verdict. In Campbell v. Mouton, 373 So.2d 237, 239 (La.App. 3d Cir.1979), this court adopted the standard for determining whether a directed verdict is proper, as follows:
“On motions for directed verdict and for judgment notwithstanding the verdict the Court should consider all of the evidence — not just that evidence which supports the non-mover’s case — but in the light and with all reasonable inferences most favorable to the party opposed to the motion. If the facts and inferences point so strongly and overwhelmingly in favor of one party that the Court believes that reasonable men could not arrive at a contrary verdict, granting of the motions is proper. On the other hand, if there is substantial evidence opposed to the motions, that is, evidence of such quality and weight that reasonable and fair-minded men in the exercise of impartial judgment might reach different conclusions, the motions should be denied, and the case submitted to the jury.”
It was admitted that Ms. Chaisson did paddle Emmanuel twice on the buttocks in a reasonable manner. Ms. Chaisson denied using excessive force or hitting Emmanuel any place except on the buttocks. Ms. Burleigh testified that Emmanuel rejoined the class after the paddling with no apparent difficulties. Mrs. Abraham testified that Emmanuel had no bruise on his back when he left for school and that she saw it when he returned from school.
Dr. Nalam, the physician who treated Emmanuel on March 19, testified at trial that he did not think that the paddle used by Ms. Chaisson could have caused the bruise on Emmanuel’s back. He thought that it looked like it had been caused by a belt or a stick.
Additionally, at trial a great deal of testimony was adduced showing a history of parental abuse, neglect and involvement of the Child Protection Agency with the Abraham family. However, this evidence is not determinative of the allegations raised by the plaintiff against these defendants, and we find no need to recount this testimony.
The trial court, in weighing the evidence presented by plaintiff, concluded the facts and inferences went so strongly in favor of the defendants that “reasonable and fair-minded men in exercising impartial judgment could not possibly reach a different conclusion but that that was not the instrument that did the damage to the boy which is the basis of the tort action....”
After review of the record and considering the trial court’s oral reasons for granting the motions for directed verdict, we conclude that the trial court was not clearly wrong in granting directed verdicts in favor of the defendants.
*52 ENLARGEMENT OF THE PLEADINGS
In plaintiff’s motion for new trial, counsel argued that the pleadings had been enlarged pursuant to LSA-C.C.P. art. 1154 by the introduction of testimony at trial concerning evaluation policies for children with special needs or problems. The thrust of plaintiffs argument was that the School Board was negligent in failing to evaluate Emmanuel, in spite of his parents objections, and as a result he suffered “educational damages.” This theory of recovery was asserted for the first time in the motion for new trial and is again asserted by way of this appeal.
The policy in question is found in Department of Education Bulletin 1508. However, this document was not introduced into evidence at the trial on the merits. The only evidence concerning an evaluation policy was elicited in testimony by Ms. Chais-son, Ms. Burleigh and Dr. Warren Lowe, a clinical psychologist who examined Emmanuel in connection with this litigation.
Ms. Chaisson and Ms. Burleigh were generally familiar with Bulletin 1508, but both testified that a child in kindergarten was not evaluated within six weeks of enrollment and thereafter usually only in exceptional circumstances. Plaintiffs counsel attempted to establish some violation of the policy through testimony of Dr. Lowe, but this was repeatedly objected to by. defendants’ counsel. The defendants objected to Dr. Lowe’s competency to testify concerning the implementation of Bulletin 1508 in Lafayette Parish and this objection was sustained by the trial court. The plaintiff was unable to establish exactly what the Lafayette Parish School Board policy was concerning evaluations and interventions in the event of a parental refusal of evaluation, therefore plaintiff was never able to establish any violation of a policy.
Our review of the evidence and testimony presented leads us to conclude that there was no enlargement of the pleadings to assert a claim for educational damages on behalf of Emmanuel. The trial court committed no error in failing to address or consider any alleged additional grounds of recovery.
For reasons stated herein, the judgment of the trial court is affirmed. The costs of this appeal are assessed to plaintiff-appellant.
AFFIRMED.